**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SYLVESTER ASBERRY,

    Plaintiff,

v.     Case No. 05-CV-70915

    PAUL D. BORMAN
    UNITED STATES DISTRICT JUDGE

DARYN ROLLINS, ANTHONY ROMITA,
and WILLIAM YUNKER, Jointly and
Severally and in their Individual Capacities,
and MACOMB COUNTY,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

This case comes before the Court on Defendants' Daryn Rollins, Anthony Romita, William Yunker, and Macomb County ("Defendants") Motion for Summary Judgment.

In October of 2003, Plaintiff Sylvester Asberry ("Plaintiff") was an inmate in the minimum security Macomb County Jail, serving a 75 day sentence for driving on a suspended license. Approximately one month into his incarceration, Plaintiff began placing a playing card in his cell door lock to keep his door unlocked while Plaintiff was out of his cell. Plaintiff had placed the card there because he believed other prisoners were stealing from him. Defendant Officer Rollins noticed the card in the lock and issued Plaintiff a rule violation on October 19, 2003. Plaintiff signed the rule violation sheet and was placed in "lockdown" for the rest of the day.

1

Plaintiff was allowed to leave his cell to get dinner. Officer Rollins escorted Plaintiff back to his cell. Plaintiff then began yelling. Plaintiff contends that he had noticed that a chess board, which did not belong to him, was sitting inside his cell and that he was yelling to notify the inmate down below to pick up the chess set. While ascending the stairs, Plaintiff came into physical contact with Officer Rollins. Plaintiff contends that Officer Rollins bumped into Plaintiff, and Officer Rollins testified that Plaintiff elbowed him. Both Plaintiff and Officer Rollins agree that Plaintiff was agitated when he and Officer Rollins ascended the stairs. Officer Rollins states that he believed the physical contact was purposeful because Plaintiff appeared to be irritated and yelling while ascending the stairs.

Officer Rollins locked Plaintiff in his cell and left. He reported to Sergeant Abbott that Plaintiff had elbowed him. Sergeant Abbott told Officer Rollins to inform classification about moving Plaintiff because he needed to go to maximum security for his actions. Classification then ordered that Plaintiff be moved to maximum security.

Later that evening, Officer Rollins returned to Plaintiff's cell with Officers Romita and Yunker to transfer Plaintiff to maximum security. This required rides on three elevators. As the officers escorted Plaintiff into the first elevator, one officer allegedly pushed Plaintiff's head and shoulder into the elevator wall. Plaintiff alleges that after the officers started to laugh at him, he turned around in the elevator, and Defendants allegedly began punching and kicking him while saying, "You're not going to assault another officer, are you?" Plaintiff states that although he was in pain, he responded that he never assaulted any officer. He contends that once the elevator doors opened, the beating stopped. Officers Romita and Yunker then escorted him to a second elevator.

Plaintiff alleges that Defendants shoved him into the second elevator, causing him to hit his shoulder and head on the elevator wall.  He states that Defendants asked him once again if he was going to assault another officer, and that he again repeated that he had not assaulted any officer.  Plaintiff alleges that at that point, one of the individual Defendants struck him across the face with an open hand, which knocked off Plaintiff's eyeglasses and caused a cut on the bridge of his nose.  Plaintiff contends that this same officer and another officer allegedly began punching Plaintiff repeatedly about his shoulders, chest, ribs, and stomach.  The alleged beating stopped when the second elevator doors opened and Plaintiff was escorted to a third elevator.

Plaintiff states that Defendants again shoved him into the elevator wall, which caused him to suffer a bleeding cut on the left side of his head.  When the third elevator stopped at the maximum security wing, Defendants escorted Plaintiff from the elevator and to his cell.  Plaintiff argues that even though he told Defendants that he was bleeding, Defendants did not respond.

Some time later, a nurse came to Plaintiff's cell and placed a bandage on Plaintiff's wound.  The nurse advised Plaintiff that he needed further treatment. Plaintiff then was taken to the hospital where he received four to seven stitches.

Plaintiff was charged with assault of a prison employee and bound over by the District Judge to Macomb County Circuit Court.  During the state district court preliminary examination, Plaintiff was represented by counsel.  Plaintiff's counsel cross-examined Officers Rollins and Yunker over a two-day period.  The state district court concluded that there was sufficient evidence to support a finding of probable cause that Plaintiff committed the assault. Nevertheless, the criminal case was dismissed when the prosecution failed to provide Plaintiff with the names of inmates who witnessed the alleged elbowing incident that formed the basis for

the criminal charge.

On March 9, 2005, Plaintiff filed suit pursuant to 42 U.S.C. § 1983 against Defendants alleging violations of the Fourth and Fourteenth Amendments.  In his Complaint, Plaintiff alleged that the individual Defendants violated his constitutional rights by using excessive force to restrain Plaintiff without a legal basis for doing so.  Plaintiff also asserted state tort claims of assault and battery, and malicious prosecution against the individual Defendants.  Plaintiff also alleged that Macomb County was liable for Plaintiff's injuries based upon the failure to train and deliberate indifference theories.

Defendants filed their Motion for Summary Judgment on May 18, 2006.  Plaintiff filed his response on June 15, 2006.  Defendants filed a Reply Brief.  Plaintiff then filed a Motion for Leave to File a First Amended Complaint to include a claim under the Eighth Amendment.  The Magistrate Judge entered an order allowing for amendment of the Complaint.  Plaintiff then filed an Amended Complaint on August 8, 2006.

## ANALYSIS

### A.     Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of

evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**1.      Claims under the Eighth and Fourteenth Amendment**

Plaintiff contends that Defendants Officers Rollins, Romita, and Yunker violated his Eighth and Fourteenth Amendment rights "[b]y using unnecessary and brutal force to restrain and batter Plaintiff where there was no legal basis to do so." (Pl.'s Amended Compl. ¶ 26). The Supreme Court has held that the Eighth Amendment is the "primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Sixth Circuit has reiterated this principle in its holding that "all post-conviction excessive force claims are to be raised 'exclusively under the Eighth Amendment's cruel and unusual punishment clause.'" *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995) (quoting *Cornwell v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992)).

The Court will analyze constitutional claims under the amendment that specifically covers the injury alleged, and not the more generalized notion of substantive due process. The Eighth Amendment to the United States Constitution provides contains a prohibition against cruel and unusual punishment. In *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992), the Supreme Court explained the standard for Eighth Amendment excessive force claims as follows:

> Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Under *Whitley*, the extent of the injury suffered by plaintiff may be one factor that will determine "whether the use of force could plausibly have been thought necessary" under the circumstances, or whether such conduct "instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." 475 U.S. at 321. In determining whether the use of force was wanton and unnecessary, courts should consider: 1) the need for application of force; 2) the relationship between that need and the amount of force used; 3) the threat reasonably perceived by the responsible officials and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

In *Hudson*, the Supreme Court reiterated that "courts considering a prisoner's claim must ask both if 'the officials acted with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* at 8. Thus, there is an objective and subjective test which must be applied to Eighth Amendment excessive force claims. *Id.*

The objective inquiry is "therefore contextual and responsive to 'contemporary standards of decency.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In the context of the excessive use of force, the Court noted:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. [citing *Whitley*]. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."

*Hudson*, 503 U.S. at 9. However, the Court proscribed from protection under the Eighth Amendment "*de minimus* uses of physical force, provided that the use of force is not of a sort

'repugnant to the conscience of mankind.'" *Id.* at 10 (quoting *Whitley*, 475 U.S. at 327) (internal quotation marks omitted).

In *Hudson*, a case quite factually similar to the one at bar, the plaintiff inmate, Hudson, had an argument with a corrections officer, which resulted in his being placed in "administrative lockdown." 503 U.S. at 4. Hudson testified that on the way to the lockdown area, the officer, McMillian, punched him in the "mouth, eyes, chest and stomach" while another officer "held [him] in place and kicked and punched him from behind." *Id.* Hudson further testified that the supervisor on duty told the officers "not to have too much fun" and did nothing to intervene. *Id.* As a result of the incident, "Hudson suffered minor bruises and swelling of his face, mouth, and lip. The blows also loosened Hudson's teeth and cracked his partial dental plate, rendering it unusable for several months." *Id.*

Although the district court found that unnecessary force was used in violation of the Eighth Amendment, the Fifth Circuit reversed this ruling. The Fifth Circuit held that although the officers force was excessive under the circumstances, Hudson could not prevail on his Eighth Amendment claim because his injuries were minor and required no medical attention. *Hudson*, 929 F.2d at 1015.

The Fifth Circuit ruling was thereafter reversed by the Supreme Court. Explaining the role that the "extent of the injury" factor plays in this analysis, the Supreme Court held:

> In this case, the Fifth Circuit found Hudson's claim untenable because his injuries were "minor." [*Hudson v. McMillian*, 929 F. 2d 1014, 1015 (1990). Yet the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not de minimis for Eighth Amendment purposes. The extent of Hudson's injuries thus provides no basis for dismissal of his § 1983 claim.

8

*Id.*[1]

Construing the facts in a light most favorable to Plaintiff, the non-moving party, the Court finds that summary judgment is not proper on Plaintiff's Eighth Amendment claim. Despite Defendants claims to the contrary, the facts in this case are virtually indistinguishable from those present in *Hudson*. Like in *Hudson*, Plaintiff was led in handcuffs to a more secure area of the jail, during this transfer, Plaintiff alleges that Defendants punched and kicked him. That Plaintiff received several stitches for the wounds at a hospital sustained during the jail incident, which the Fifth Circuit found significantly absent from the facts in *Hudson*, further supports the finding that summary judgment is not be proper on Plaintiff's Eighth Amendment claims of excessive force by the individual Defendants. Finally, the Court notes that Defendants failed to follow Macomb County Jail procedure by not carrying a videocam to record the transfer of Plaintiff in the three elevators which do not contain videocams.

Since the Court finds summary judgment improper on Plaintiff's Eighth Amendment claim, the Court now considers Plaintiff's state law claims.

---

[1] Moreover, concerning the proper Eighth Amendment standard, the Sixth Circuit has stated that:

> Although the maintenance of prison security and discipline may often require that prisoners be subjected to physical contact which at common law would be actionable as an assault, *see Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986), a violation of the Eighth Amendment will nevertheless occur "if the offending conduct reflects an 'unnecessary and wanton infliction of pain.'" *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (quoting *Ingraham v. Wright*, 430 U.S. 651, 51 L. Ed. 2d 711, 97 S. Ct. 1401 (1977) (other citations omitted). *Accord Duckworth v. Franzen,* 780 F.2d 645, 652 (7th Cir. 1985) ("If a guard decided to supplement a prisoner's official punishment by beating him, this would be punishment . . . .").

*Pelfrey*, 43 F.3d at 1037.

**2.        Governmental Immunity for Assault and Battery and Malicious Prosecution Claims**

Defendants contend that Macomb County is entitled to governmental immunity because there is no intentional tort exception for government agencies under Michigan's government tort liability act.  Plaintiff does not address this contention in his response.

Under Michigan law, and subject to certain statutory exceptions, a "governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."  MICH. COMP. LAWS ANN. § 691.1407(1); *Mack v. Detroit*, 467 Mich. 186, 204 (2002).  Michigan law also provides that a county is a governmental agency.  MICH. COMP. LAWS ANN. § 691.1404(b).   The Michigan Supreme Court has held that "[t]he operation and maintenance of a jail is a governmental function" that subjects a governmental agency entitled to immunity from tort liability.  *Spruytte v. Dep't of Corrs.*, 82 Mich. App. 145, 148 (1978) (affirming grant of immunity to department of corrections and noting that "the prisoner transfer procedure . . . is an incident of the operation and maintenance of prisons and thus is within the scope of the performance of a uniquely governmental function").

In *Mack*, the Michigan Supreme Court held that a governmental agency is entitled to summary judgment where a plaintiff fails to plead facts to avoid governmental immunity:

> Because plaintiff failed to state a claim that fits within a statutory exception or plead facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function, we conclude that plaintiff did not plead and could not plead in avoidance of governmental immunity and that her sexual orientation discrimination claim should have been dismissed on the city's motion for summary disposition.

467 Mich. at 205.  Accordingly, since Plaintiff has neither responded to Defendants' argument nor pled facts in avoidance of governmental immunity, the Court finds that Macomb County, a governmental agency that was engaged in the governmental function of operating a jail at the

time of the alleged incident, is entitled to summary judgment on Plaintiff's tort claims of assault and battery and malicious prosecution.

**3.      Malicious Prosecution**

Defendants contend that Plaintiff is estopped from bringing his malicious prosecution claims because the state court has previously ruled that the individual Defendants had probable cause to prosecute Plaintiff for assault. Plaintiff responds that he is not relitigating the issue of probable cause but rather is seeking to show that the individual Defendants provided false testimony in their incident reports and to their superiors which led to the felonious "assault of a prison employee" charge. Plaintiff further contends that Defendants Rollins and Yunker made material, false statements at Plaintiff's preliminary examination which caused the state court to determine that probable cause existed to bind the criminal case over to the Wayne County Circuit Court.

"A finding in a prior criminal proceeding may estop an individual from relitigating the same issue in a subsequent civil action." *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002). In ruling that plaintiff could maintain a later claim of malicious prosecution in federal court despite the state court's finding on probable cause, the Sixth Circuit noted that "a finding of probable cause in a prior criminal proceeding does not bar a plaintiff in a subsequent civil action from maintaining a claim for malicious prosecution under Michigan law where the claim is based on a police officer's supplying false information to establish probable cause." *Id.* at 202-03 (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001)). The holding in *Darrah* relied upon an unpublished opinion from the Sixth Circuit, *Josey v. Salisbury*, No. 92-2093, 1993 U.S. App. LEXIS 30046, at *6-7 (6th Cir. Nov. 18, 1993), which stated that:

> In this action, the core issue is whether the officers misstated the facts to establish probable cause[;] at the preliminary hearing, the central question was whether there was probable cause. While the two inquiries are clearly related, they are not identical. Consequently, the identity of issues required for preclusive effect is absent here.

Defendants contend that these cases are inapplicable because the basis of Plaintiff's claim is that the prosecution lacked probable cause, and not that Defendants manufactured testimony to establish probable cause. They cite Plaintiff's Complaint which alleges that Defendants "instituted and initiated the criminal prosecution against Plaintiff without probable cause and with malice." (Amended Compl. ¶ 22). The elements of a malicious prosecution claim are: "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365, 378 (1998).

The Court finds that the individual Defendants are not entitled to summary judgment on Plaintiff's malicious prosecution claim. Although Defendants argue that the sole basis of Plaintiff's malicious prosecution is a lack of probable cause, the Court finds that the present situation does not differ in kind from the Sixth Circuit cases cited above. Plaintiff has argued in his response that he believes that there was no probable cause to try him for assault of a prison employee because the individual Defendants fabricated statements throughout the investigation and proceedings. Plaintiff's basis for his belief that there was no probable cause is not an element of a malicious prosecution claim, and thus he was not required to plead such in his Complaint. Plaintiff has provided the basis of his malicious prosecution claim – that Defendants

12

provided false testimony to manufacture probable cause – in his response to this motion. If Plaintiff's allegations are true, then there was never probable cause to try Plaintiff for assault of a prison employee. Furthermore, the alleged giving of false testimony would also support that Defendants acted with malice. Accordingly, applying the Sixth Circuit's holdings in *Hinchman* and *Darrah*, the Court holds that the individual Defendants are not entitled to summary judgment on Plaintiff's claim because said claim is based on the officers' supplying false information to establish probable cause.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment. Specifically, the Court **GRANTS** the motion with respect to all counts against Defendant Macomb County, and **DENIES** the motion with respect to the remaining claims against the individual Defendants Robbins, Romita, and Yunker.

**SO ORDERED.**


s/Paul D. Borman
**PAUL D. BORMAN**
**UNITED STATES DISTRICT JUDGE**

**Dated: September 11, 2006**

## CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 11, 2006.**

s/Denise Goodine
**Case Manager**

13